178 So.2d 551

**BRADLEY & McWHIRTER, INC.,**

v.

**Irvin L. CONKLAN et al.**

**1 Div. 106.**

Supreme Court of Alabama.

June 30, 1965.

Rehearing Denied Sept. 30, 1965.

396

Abram L. Philips, Jr., of Pillans, Reams, Tappan, Wood & Roberts, Mobile, for appellees.

Wm. R. Favre, Jr., of Tonsmeire & McFadden, Mobile, for appellant.

LAWSON, Justice.

This is an action by Irvin L. Conklan and wife against Bradley & McWhirter, Inc., a corporation, for damages for the overflow of plaintiffs' land.

The complaint contains only one count. After the demurrer interposed thereto was overruled, the defendant pleaded the general issue, the statute of limitations of one year, and two other pleas with which we are not presently concerned. Demurrer was overruled as to the pleas of the general issue but was sustained as to the plea setting up the statute of limitations.

The trial, had before the court without a jury, resulted in a judgment for the plaintiffs in the amount of $1,500. From that judgment the defendant appealed.

█ The defendant insists that the trial court erred in overruling its demurrer to the complaint. The particular defect insisted upon is that the single count of the complaint joins therein several distinct causes of action in that it claims damages for separate and distinct overflows. If the complaint is subject to that construction it is bad and the demurrer which took that point should have been sustained. Alabama Great Southern R. Co. v. Shahan, 116 Ala. 302, 22 So. 509; Sloss-Sheffield Steel & Iron Co. v. Mitchell, 167 Ala. 226, 52 So. 69. See McDougal v. Alabama Great Southern R. Co., 210 Ala. 207, 97 So. 730; Goodyear Tire & Rubber Co. of Ala., Inc. v. Gadsden Sand & Gravel Co., 248 Ala. 273, 27 So.2d 578; Louisville & N. R. Co. v. Farmers' Produce Co., 17 Ala.App. 388, 85 So. 578.

The complaint in pertinent parts reads:

"The plaintiffs claim of the defendant Five Thousand and No/100 ($5,000.00) Dollars as damages for this: That on, to-wit, the 26th day of July, 1957, the plaintiffs were in possession of, had built a house on, and did reside on that certain real property situated in Mobile County, Alabama, being a house and lot, more particularly described as follows:

\* \* \* \* \* \*

and the plaintiffs being so possessed of said lands, and the defendant being in full awareness of the plaintiffs' possession and residence, the defendant did willfully enter upon land situated nearby and adjacent thereto and did willfully perform various earth moving operations, and did construct streets and roads, street gutters and storm sewers; and in doing so did, with complete disregard for the plaintiffs, cause natural rainwater and drainage water to divert from its normal, usual and natural drainage courses, to be collected and channeled into the aforementioned gutters and sewers, and to be funneled onto and deposited on the said land of the plaintiffs in unnatural and excessive quantities and with unnatural and excessive rapidity. And the plaintiffs aver that thereafter, and for a period of twelve months immediately preceding the filing of this suit on, to-wit; the 29th day of July, 1960, the aforementioned conduct of the defendant caused the plaintiffs' land to be flooded with water and with sand, silt, dirt and trash which is washed along with said water, upon every occurrence of substantial rain during these twelve months; thereby causing damage and injury to the plaintiffs during the twelve month period immediately prior to the filing of this suit in the following manner: \* \* \*."

█ The complaint charges the construction of a permanent drainage system, which caused rain and drainage water to be diverted from its natural drainage courses and to be funneled upon plaintiffs' property in excessive quantities and with excessive rapidity "upon every occurrence of substantial rain" during the twelve-month period which immediately preceded the filing of the suit. We are of the opinion that it states but a single cause of action. The averments relative to overflow upon every occurrence of substantial rain during the twelve-month period indicated is but a mere averment of evidential facts which did not amount to stating separate and distinct causes of action in the same count of the complaint. City of Birmingham v. Flowers, 224 Ala. 279, 140 So. 353.

In Alabama Great Southern R. Co. v. Shahan, 116 Ala. 302, 22 So. 509, the damage and overflow was charged to be due to negligence in permitting the culvert to be obstructed from extraneous causes and not that it was insufficiently constructed so as to carry off the usual flow of water. The

Shahan Case, supra, was distinguished on that ground in the Flowers Case, supra.

The case of Sloss-Sheffield Steel & Iron Co. v. Mitchell, 167 Ala. 226, 52 So. 69, was not discussed in the Flowers Case, supra, but it dealt with the question of damages caused by the partial obstruction of a stream rather than with a drainage system such as was involved in the Flowers Case, supra, and as is involved in this case.

In view of the holding in the Flowers Case, supra, we conclude that the trial court did not err in overruling the defendant's demurrer to the complaint.

The defendant contends that the trial court erred in sustaining plaintiffs' de-demurrer to defendant's plea of the statute of limitations of one year. That plea is substantially in the form prescribed by the statute. § 233, Form 35, Title 7, Code 1940.

But we think the demurrer was properly sustained to the plea which presented the statute of limitations of one year, although we are aware of the fact that in so concluding we run counter to our holdings in City of Anniston v. Isbell, 273 Ala. 696, 144 So. 2d 18, and in Goodyear Tire & Rubber Co. of Ala., Inc. v. Gadsden Sand & Gravel Co., 248 Ala. 273, 27 So.2d 578.

It has long been recognized in this state that an action to recover damages for overflowing lands is barred within one year, being governed by the provisions now codified as the fifth subdivision of § 26, Title 7, Code 1940. Roundtree v. Brantley, 34 Ala. 544; Polly v. McCall, 37 Ala. 20.

The question arises, of course, as to when the statute begins to run.

In the Isbell Case, supra, we held that the one-year statute began to run at the time of the construction of the storm sewer rather than at the time the plaintiff's property was damaged by an overflow which occurred some four years after the construction of the sewer because the storm sewer constituted a permanent nuisance. In support of that holding we cited the case of Goodyear Tire & Rubber Co. v. Gadsden Sand

& Gravel Co., 248 Ala. 273, 27 So.2d 578. See City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606. In the Goodyear Case, supra, we expressly declined to discuss Goodyear's insistence that under the evidence it was entitled to the affirmative charge on each count because of the bar of the statute of limitations of one year. But the opinion contains these statements: "While the cause of action for a permanent nuisance arises on construction of the nuisance," and "The statute runs from the time of the construction of the permanent nuisance but runs from the infliction of the injury when the nuisance is abatable." (248 Ala., 278, 27 So.2d 582.) The quoted statements were made in the treatment of Goodyear's insistence that each count of the complaint was subject to demurrer because in each of them separate and distinct causes of action had been joined. Those statements were used to point out that different statutes of limitations were involved as to the different causes of action set up in each count.

In support of the statements to the effect that the statute of limitations begins to run from the time of the construction of the permanent nuisance, we cited the case of Harris v. Town of Tarrant City, 221 Ala. 558, 130 So. 83. But the Harris case, supra, does not support that statement. It does hold that when a city in the exercise of its duty adopts a system of drainage to care for rainwater and constructs storm sewers or ditches for that purpose, the system will be treated as of such character as to be embraced in § 235 of the Constitution of this state and cannot ordinarily be abated; that when a suit is so framed as to claim damages for the construction of the system, the plaintiff is to be compensated as for a permanent injury and damages are to be awarded *in solido*. But in the Harris Case, supra, we were not concerned with a plea of the statute of limitations and there is no language in the opinion to the effect that the statute of limitations begins to run from the time of the construction of a permanent nuisance. Nor does the case of City of Huntsville v. Miller, 271 Ala. 687, 127 So.

2d 606, contain any such language. It was probably cited in City of Anniston v. Isbell, supra, because it quotes at length from Harris v. Town of Tarrant City, supra.

Aside from City of Anniston v. Isbell, supra, and Goodyear Tire & Rubber Co. v. Gadsden Sand & Gravel Co., supra, no case has come to our attention where this court has said, in effect, that the statute of limitations begins to run from the time of the construction of a permanent nuisance, irrespective of the fact that the act which caused the damage did not occur until after the statute of limitations had run from the time of the construction of the alleged nuisance.

We held to the contrary in Powell v. Edwards, 237 Ala. 572, 187 So. 716, decided in 1939. That was an action for damages for injuries to lands by the diversion of surface waters caused by the installation of culverts in or under a railroad fill or embankment. The receivers for the railroad contended that they were entitled to the affirmative charge because the culverts had been installed more than one year prior to the date of injury or damage. We affirmed the action of the trial court refusing the affirmative charge requested by the receivers, saying in pertinent part as follows:

"The action seeks recovery in one action for the injury to the market value of the lands, the permanent injury. Admittedly these culverts were installed more than one year before suit brought. Appellants' view is that the one year statute applicable to such actions began to run from the time these culverts or the last of them was constructed. The recovery includes depreciation in market value to the time of suit brought December 7, 1937. There was evidence that the flooded conditions due to heavy rains of 1937 caused a depreciation of the market value during the one year period before suit brought. The trial court, in his instructions, limited the recoverable damages to depreciation in value during that period.

"We find no error in refusal of the affirmative instructions, or in refusal of the charge limiting recovery to nominal damages." (237 Ala., 573, 187 So., 717.)

In Savannah, Americus & Montgomery Ry. v. Buford, 106 Ala. 303, 17 So. 395, Buford sued the railroad to recover damages for injury to his land by reason of the overflow of surface water thereon, which was alleged to have been caused by the construction by the defendant of its railway across Buford's land. Among other pleas the defendant filed a plea of the statute of limitations of one year. Mr. Chief Justice Brickell, writing for the court, on the question presented by the plea of the statute of limitations said, in part, as follows:

"The statute of limitations to which the action is subject is subdivision 6, § 2619, of the Code [now subdivision 5 of § 26, Title 7, Code 1940], which reads: 'Actions for any injury to the persons or rights of another, not arising from contract, and not being specifically enumerated,' must be commenced within one year after the cause of action accrued. * * * The roadbed and embankment are permanent and continuous structures; and if their erection had given the plaintiff a cause of action, and then all the damage which could have resulted had resulted, the statute of limitations would have commenced to run from the time of their completion. But if the thing complained of is not necessarily injurious, or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run * * *. The error of the instructions by the defendant as to the statute of limitations lies in the hypothesis that the construction of the embankment and roadbed gave the plaintiff a cause of action, and that such

**400**

was the cause of action averred in the complaint. The embankment and road-bed were lawful structures, lawfully erected, and their construction was not an invasion of any right of the plaintiff, and furnished her no cause of action. The legal injury to her, which gave her a cause of action, was coincident with the overflow of her lands, caused by the embankment and road-bed, and it is from the happening of the injury the statute of limitations commenced to run." (106 Ala., 313–314, 17 So., 398)

■ We are constrained to the conclusion that our holding in City of Anniston v. Isbell, supra, and our statements or observations in Goodyear Tire & Rubber Co. v. Gadsden Sand & Gravel Co., supra, to the effect that in actions brought to recover damages for injury to land which results from the overflowing of plaintiff's property due to the construction of a sewerage or drainage system, the statute of limitations is to be treated as having begun to run from the time of the construction of the system, are erroneous and will not be followed.

■ It is our view that the plaintiffs' cause of action, as shown by the complaint, accrued within a year previous to the date of the filing of the complaint and there is no averment in the plea setting up the statute of limitations of one year to the effect that it accrued earlier. We hold, therefore, that the plaintiffs' demurrer to the plea of the statute of limitations was properly sustained.

Finding no error in the rulings of the trial court relied upon by the defendant for reversal, we affirm the judgment of the trial court.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, COLEMAN and HARWOOD, JJ., concur.

SIMPSON, J., dissents.